# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DIANA L. HIMES, individually and as
administrator of the estate of David Himes,
her husband, deceased,

    Plaintiff,

    v.

MEDSTAR-GEORGETOWN
UNIVERSITY MEDICAL CENTER, *et al.*,

    Defendants.

Civil Action No. 08–1804 (CKK)

## MEMORANDUM OPINION
(December 1, 2010)

Plaintiff Diana Himes ("Mrs. Himes") filed the above-captioned action against

Defendants Medstar-Georgetown University Medical Center, Dr. Patrick Jackson, and Dr. Tina

Rosenbaum (collectively, "Defendants"), alleging that Defendants' medical negligence caused

the death of her husband, David Himes ("Mr. Himes"). Mrs. Himes asserts claims pursuant to

the District of Columbia's Survival Statute, D.C. Code § 12-101 (Count I), and Wrongful Death

Act, D.C. Code § 16-2701 (Count II). Currently before the Court are Defendants' [60] Motion

for Partial Summary Judgment, in which Defendants argue that Mrs. Himes may not recover the

value of certain services Mr. Himes provided his adult children under her Wrongful Death Act

claim, and Plaintiff's [63] Motion for Leave to File a Surreply. The parties have filed their

respective oppositions and replies to these pending motions. For the reasons set forth below, the

Court shall DENY Plaintiff's motion for leave to file a surreply. Additionally, the Court shall

DENY Defendants' motion for partial summary judgment as (1) Mrs. Himes is not barred as a

matter of law from recovering the value of Mr. Himes' services to his adult children; and (2) a

genuine issue exists as to whether Mr. Himes in fact provided services to his adult children.

## I. BACKGROUND

### A.     Factual Background

In August 2007, Mr. Himes was referred to Dr. Patrick Jackson at Medstar-Georgetown

University Medical Center ("Hospital"), in the District of Columbia, for a consultation regarding

a cyst on his pancreas. *See* Defs.' Mot. for Partial Summ. J. ("Defs.' Mot."), Docket No. [60],

Ex. 2 (Plaintiff's Supplemental Answers to Interrogatories (hereinafter "Pl.'s Suppl. Answers to

Interrogs.")) at 6.[1]  As a result of this consultation, Mr. Himes was informed that there was a 95%

chance that his cyst was malignant or premalignant. *See id.* at 5.  Consequently, in September

2007, Mr. Himes underwent surgery to remove the cyst. *See id.*; Pl.'s Opp'n to Defs.' Mot. for

---

[1] The Court strictly adheres to the text of Local Civil Rule 7(h) when resolving motions for summary judgment. *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case).  The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Order (Jan. 16, 2009), Docket No. [16], at 4-5.  In this case, Defendants filed a Statement of Material Facts ("Statement" or "Stmt.") in compliance with the Local Rules and this Court's prior Order.  Plaintiff, meanwhile, included a "Statement of Facts" section in her opposition, but this section does not explicitly controvert any of the facts identified in Defendants' Statement and instead sets forth an opposing factual narrative.  *See* Pl.'s Opp'n at 2-9; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) ("The district court's obligation in examining a Rule [7](h) statement of material facts in dispute, however labeled and wherever it appears in the opposition pleadings, extends [] only to a determination of whether the party opposing summary judgment has complied with the rule's plain requirements.")*.*  As Plaintiff's "Statement of Facts" does not comply with Rule 7(h), the Court shall assume that the facts identified in Defendants' Statement are admitted.  *See id.* at 154 (affirming the trial court's decision to deem defendant's statement of material facts admitted when plaintiff did not comply with the applicable local rule and instead filed a "relevant facts" section in his opposition). Accordingly, the Court shall cite to only to Defendants' Statement and, where appropriate, directly to evidence in the record.

Partial Summ. J. ("Pl.'s Opp'n"), Docket No. [61], Ex. 2 (Excerpts from June 9, 2009 Deposition of Patrick Jackson, M.D. (hereinafter "Jackson Dep.")) at 379:11-380:15.

The morning of October 23, 2007, Mr. Himes returned to the Hospital due to bleeding related to his earlier surgery. *See* Pl.'s Suppl. Answers to Interrogs. at 7. Sometime later that day, Mr. Himes left the Hospital, only to return that evening with similar complaints of bleeding. *See id.*; Jackson Dep. at 381:1-20. Mr. Himes' bleeding continued to worsen overnight, and he died in the Hospital the following day, October 24, 2007. *See* Defs.' Stmt. ¶ 12; Jackson Dep. at 381:1-20. Mr. Himes was forty-nine years old. *See* Defs.' Stmt. ¶ 15; Pl.'s Suppl. Answers to Interrogs. at 2; Pl.'s Opp'n, Ex. 1 (Excerpts from May 8, 2009 Deposition of Diana Himes (hereinafter "Diana Himes Dep.")), at 13:2-4.

Prior to undergoing surgery, from 1995 to 2007, Mr. Himes was employed by Cardinal Concrete in Lorton, Virginia. Pl.'s Suppl. Answers to Interrogs. at 2. In 2003, Mr. Himes suffered a work-related injury that caused him constant pain for the rest of his life and forced him to undergo cervical spinal fusion surgery. *Id.* at 2-3; Defs.' Stmt. ¶¶ 6-7. As a result of this injury, Mr. Himes could only engage in sedentary, light-duty work and could not return to his position at Cardinal Concrete as an assistant plant manager. *See* Defs.' Stmt. ¶ 6; Pl.'s Suppl. Answers to Interrogs. at 3.

Accordingly, Mr. Himes spent the majority of his time in 2007 at his home, where he lived with his wife, Diana Himes; his three adult children, David Samuel Kidd, Nicole Diane Kidd, and Daniel Allen Roberts (collectively, "Adult Children"); and Nicole's two minor children—his grandchildren. *See* Defs.' Stmt. ¶ 1; Diana Himes Dep. at 64:3-65:5. While at home, Mr. Himes cared for his grandchildren, including feeding them and watching them when

his daughter Nicole could not. Defs.' Stmt. ¶¶ 9, 11; Diana Himes Dep. at 64:10-16, 66:5-8, 66:18-19; Pl.'s Opp'n, Ex. 4 (Excerpts from June 16, 2009 Deposition of Nicole Diane Kidd (hereinafter "Nicole Kidd Dep.")), at 27:2-8. Mr. Himes also performed various household chores for his family, including yard work, laundry, cooking, and grocery shopping. Defs.' Stmt. ¶¶ 8-9; Diana Himes Dep. at 64:16-65:2, 66:9-67:2, 67:15-21; Nicole Kidd Dep. at 27:17-28:13. Finally, the Adult Children relied on Mr. Himes to be available for advice or if they needed to talk. *See* Diana Himes Dep. at 66:15-17; Defs. Mot., Ex. 5 (Excerpts from June 16, 2009 Deposition of David Samuel Kidd), at 20:12-15.

B.    *Procedural History*

On October 22, 2008, Mrs. Himes filed the Complaint in this case, alleging that, *inter alia*, Defendants' negligent diagnosis, treatment, and care of Mr. Himes' pancreatic cyst and postoperative bleeding caused his death. Compl., Docket No. [1], ¶ 23.[2] In both her individual capacity and as the administrator of Mr. Himes' estate, Mrs. Himes asserts claims under the District of Columbia's Survival Statute (Count I) and Wrongful Death Act (Count II). *Id.* ¶¶ 2, 21-28. Relevant to the pending motions, Mrs. Himes seeks damages for the loss of both Mr. Himes' financial support and services that she and Mr. Himes' heirs allegedly suffered as a result of his death. *Id.* ¶ 28. According to an expert report that Mrs. Himes has produced, the present value of all of Mr. Himes' services that Mrs. Himes and Mr. Himes' heirs lost is estimated at $220,793. *See* Defs.' Mot., Ex. 8 (October 23, 2009 Supplemental Report of Economic Loss of David Himes), at 6.

_____

[2]After paragraph 18, the Complaint reverts to numbering the next four paragraphs 15-18. Subsequently, the Complaint skips from paragraph 21 to paragraph 26, omitting paragraphs 22-25. To avoid confusion, the Court shall refer to the Complaint's paragraphs as if they were consecutively numbered.

Defendants filed their [6] Answer on December 1, 2008.  After the parties conducted discovery, Defendants filed a [60] Motion for Partial Summary Judgment ("Defs.' Mot.") on April 2, 2010.  Subsequently, Mrs. Himes filed her [61] opposition ("Pl.'s Opp'n") and Defendants filed their [62] reply ("Defs.' Reply").  Two days after Defendants filed their reply, Mrs. Himes filed a [63] Motion for Leave to File a Surreply ("Pl.'s Mot. for Leave"), to which Defendants filed an [64] opposition, and Mrs. Himes filed a [65] reply thereto.  The parties' briefing on the pending motions is now complete, and the matter is therefore ripe for review and resolution by this Court.

## II.  LEGAL STANDARD

Defendants have filed a motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  All underlying facts and inferences are analyzed in the light most

favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See id.* at 248.  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987); *see also Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Conclusory assertions offered without any factual basis for support do not satisfy an opponent's burden to set forth "affirmative evidence" showing a genuine issue for trial.  *Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham*, 813 F.2d at 1241).

### III.  DISCUSSION

A.      *The Court Shall Deny Mrs. Himes' Motion for Leave to File a Surreply*

"The decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the court."  *Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007).  Mrs.

6

Himes has moved to file a surreply, contending that Defendants argued for the first time in their

reply that her Wrongful Death Act claim may not include the value of Mr. Himes' services to the

Adult Children because the claim is "limited to the monetary valuation of loss of services offered

by Plaintiff's economic expert." Pl.'s Mot. for Leave at 1-2. Defendants, however, do not

actually raise this argument in their reply; rather, Defendants argue that the expert's estimate

must be allocated *among* the Adult Children and Mrs. Himes, as opposed to the Adult Children

and Mrs. Himes *each* receiving the total amount of the estimate. *See* Defs.' Reply at 5 ("The

value of the services this decedent provided to the household are the same regardless of the

number of occupants in the house. . . . [T]he matter becomes one of allocation, not additional

recovery."). Therefore, Mrs. Himes is not entitled to file a surreply on this basis. *See United

States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77

(D.D.C. 2002) ("A surreply may be filed only . . . to address new matters raised in a reply to

which a party would otherwise be unable to respond."). To the extent Defendants' reply may be

construed to raise new arguments, the Court shall ignore such arguments in resolving

Defendants' motion for partial summary judgment. *See Baloch*, 517 F. Supp. 2d at 348 n.2 ("If

the movant raises arguments for the first time in his reply to the non-movant's opposition, the

court will either ignore those arguments in resolving the motion or provide the non-movant an

opportunity to respond to those arguments by granting leave to file a sur-reply."). Accordingly,

the Court shall deny Plaintiff's motion for leave to file a surreply.

B.      *Defendants' Motion for Partial Summary Judgment*

Defendants' motion for partial summary judgment is limited to the narrow issue of what

damages Mrs. Himes may recover under her Wrongful Death Act claim (Count II).[3]  *See* Defs.'

Mot. at 4-9.  The Wrongful Death Act provides, in pertinent part:

> [Damages] shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the spouse or domestic partner and the next of kin of the deceased person; and shall include the reasonable expenses of last illness and burial.  Where there is a surviving spouse or domestic partner, the jury shall allocate the portion of its verdict payable to the spouse or domestic partner and next of kin, respectively, according to the finding of damage to the spouse or domestic partner and next of kin.  D.C. Code § 16-2701(b).

The Act provides a decedent's "close relatives" a cause of action to recover damages for " 'the pecuniary benefits that [they] might reasonably be expected to have derived from the deceased had he lived.' "  *Lewis v. Lewis*, 708 A.2d 249, 251-52 (D.C. 1998) (quoting *Semler v. Pyschiatric Inst. of Washington, D.C., Inc.*, 575 F.2d 922, 925 (D.C. Cir. 1978)).  A decedent's close relatives may recover these damages "provided the personal representative of [the] deceased's estate prevails in their behalf in the wrongful death action . . . ."  *Runyon v. District of Columbia*, 463 F.2d 1319, 1321 (D.C. Cir. 1972).  Under the Wrongful Death Act, pecuniary losses include both: (1) "the loss of financial support the decedent could have expected to provide the next of kin had he lived;" and (2) "the value of lost services (e.g., care, education, training, and personal advice)."  *Herbert v. District of Columbia*, 808 A.2d 776, 778 n.2 (D.C.

---

[3] As this is a diversity action, the Court must generally first determine which jurisdiction's law to apply. The Court notes, however, that Defendants have not challenged Mrs. Himes' application of the District of Columbia's Wrongful Death Act, and both parties therefore assume that District of Columbia law governs. "The Court need not and does not question the parties' assumptions on that point." *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009); *see also CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996) (parties may waive choice-of-law arguments); *C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 255 n.5 (D.D.C. 2007) (same); *cf. In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions *sua sponte*.").

2002); *accord District of Columbia v. Hawkins*, 782 A.2d 293, 303 (D.C. 2001); *Doe v. Binker*, 492 A.2d 857, 863 (D.C. 1985). The Act, however, does not provide damages for non-pecuniary losses, such as grief, mental anguish, or sentimental loss. *See, e.g.*, *Elliott v. Michael James, Inc.*, 559 F.2d 759, 766 (D.C. Cir. 1977).

Defendants' motion for partial summary judgment, hardly the model of artful drafting, pertains only to Mrs. Himes' claims for damages for the loss of Mr. Himes' services, and particularly his care, education, training, guidance, and personal advice (collectively, "parental services") to the Adult Children.[4] Specifically, Defendants assert two alternative grounds for precluding such damages. First, Defendants argue that because the Adult Children have reached the age of majority, Mrs. Himes is barred as a matter of law from recovering the value of Mr. Himes' parental services to the Adult Children. *See* Defs.' Mot. at 6-7. Alternatively, Defendants weave their way through a series of contentions to essentially argue that, even if Mrs. Himes could recover damages for the Adult Children's lost parental services, Mrs. Himes has failed to present sufficient evidence of such services, and consequently these damages should be barred. *See id.* at 8-9.

Before addressing the merits of Defendants' motion, the Court notes that in addition to the Wrongful Death Act itself, Mrs. Himes' damage claims are also governed by several general principles. Namely, "[t]he issue of damages in a wrongful death or survival action, as in other actions, is particularly within the province of the jury." *Binker*, 492 A.2d at 863; *see also id.* at

---

[4] Damages for a decedent's lost services may extend beyond just parental services and include such services as cooking dinner, grocery shopping, and household repairs. *See, e.g.*, *Graves v. United States*, 517 F. Supp. 95 (D.D.C. 1981). With one exception set forth below, Defendants' motion for partial summary judgment only addresses the parental services subset of services that Mr. Himes provided to his family.

9

864 ("In wrongful death actions, '[t]he amount of damages to be awarded must be based largely on the good sense and sound judgment of the jury . . . [and] all the facts and circumstances of the case.' " (quoting *Rankin v. Shayne Bros., Inc.*, 234 F.2d 35, 36 (D.C. Cir. 1956) (alterations in the original)).  Despite this discretion, a jury's damage award must be supported by "substantial evidence"—*i.e.*, "the evidence must be more than a 'scintilla,' but it 'need not point entirely in one direction.' " *Id.* (quoting *Balt. & O.R. Co. v. Postom*, 177 F.2d 53, 55 (1949)).  Additionally, "[w]hile damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages."  *Wood v. Day*, 859 F.2d 1490, 1493 (D.C. Cir. 1988) (quoting *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982)) (internal quotation marks omitted and alteration in the original).  With these general principles in mind, the Court now turns to the merits of Defendants' motion for partial summary judgment.

<u>1.</u>      <u>The Wrongful Death Act Does Not Preclude Mrs. Himes from Recovering</u>
<u>Damages for the Adult Children's Lost Parental Services</u>

Defendants' principal argument is that no case law supports allowing Mrs. Himes to recover, under a Wrongful Death Act claim, the value of the Adult Children's lost parental services.  Defs.' Mot. at 6.  In response, Mrs. Himes argues, *inter alia*, that the Act does not explicitly preclude adult children from recovering the value of lost parental services and the cases Defendants rely upon are distinguishable.  Pl.'s Opp'n at 9-11, 13-21.  For the reasons set forth below, the Court agrees with Mrs. Himes.

Notably, as Mrs. Himes correctly notes, the plain language of the Wrongful Death Act does not explicitly bar a decedent's adult children from recovering damages for lost parental services.  *See* Pl.'s Opp'n at 10.  The beneficiaries of a Wrongful Death Act claim are statutorily defined as the decedent's "spouse or domestic partner and [] next of kin."  D.C. Code § 16-

2701(b).  Nowhere does the Act distinguish among these potential beneficiaries on the basis of their age or whether they are seeking damages for lost parental services.  *See id.* § 16-2701; *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' ") (internal citations omitted).  Instead, potential beneficiaries under the Act include a decedent's "next of kin," D.C. Code § 16-2701(b), which is a "broad and inclusive" term that this Court must afford a "generous construction," *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1234 (D.C. Cir. 1997) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)); *see also Public Citizen v. Farm Credit Admin.*, 938 F.2d 290, 293 (D.C. Cir. 1991) ("[I]f [the legislature] has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, it is not [a court's] function . . . to subvert that effect." (quoting *Consumers Union v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978))).  Therefore, the Court concludes that the plain meaning of the Act's text does not substantiate Defendants' narrow interpretation that would bar a decedent's adult children, but not minor children, from recovering damages for lost parental services.

Defendants, not to be deterred by the fact that the Wrongful Death Act's text does not support their position, forgo any textual analysis in favor of cobbling together an assortment of cases they claim indicate that adult children cannot recover the value of lost parental services under the Wrongful Death Act.  *See* Defs.' Mot. at 6-7.  Upon review of these cases, the Court finds Defendants' argument unconvincing.

Defendants first rely on *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001).

11

*See* Defs.' Mot. at 6.  In *Butera*, the D.C. Circuit analyzed, *inter alia*, whether a mother had a constitutionally protected liberty interest in companionship with her adult son that could be enforced through a section 1983 claim.  235 F.3d at 654-56.  The D.C. Circuit resolved this question in the negative, finding that the diminishing dependence that adult children generally have on a parent warranted distinguishing case law that had found that parents have a constitutionally protected liberty interest in companionship with their minor children.  *See id.* at 655-56.

Without any explanation as to its relevance, Defendants quote the *Butera* court's discussion distinguishing the relationships adult and minor children have with their parents.  *See* Defs.' Mot. at 6.  As this discussion does not pertain to the Wrongful Death Act, *Butera* is clearly not binding authority as to whether adult children may recover damages for lost parental services under the Act.  To the extent Defendants rely on *Butera* to argue that, as a general principle, an adult child relies on a parent less than a minor child, the Court need not agree nor  disagree.  Because damages under the Wrongful Death Act are not awarded based on social norms of dependency, but based on the beneficiary's actual dependency on the decedent, the general principle enunciated in *Butera* does not persuade the Court to impose an age restriction on Wrongful Death Act beneficiaries that is unsupported by the Act's text.  *See Lewis*, 708 A.2d at 251-52 (damages under the Wrongful Death Act are limited to "the pecuniary benefits that statutory beneficiaries might reasonably be expected to have derived from the deceased had he lived." (quoting *Semler*, 575 F.2d at 925) (internal quotation marks omitted)).

Second, Defendants rely on the 115-year-old case of *Baltimore & P.R. Co. v. Golway*, 6 App. D.C. 143, 1895 WL 11770 (D.C. Cir. 1895), to argue that damages for lost parental services

are not recoverable once a decedent's child reaches the age of majority. Defs.' Mot. at 6-7. In *Golway*, the court interpreted the language of a previous District of Columbia wrongful death statute, which is substantially identical to the current statutory language in all relevant respects, to limit damages assessed under the statute to pecuniary injuries. *Id.* at *22. The court then concluded that "the advice and counsel of a good and sensible father" to adult children has a value too "vague and uncertain" to constitute a pecuniary injury. *Id.* (reversing the trial court's jury instruction permitting such damages).

Modern courts interpreting the current Wrongful Death Act agree with the *Golway* court that, under District of Columbia law, a plaintiff may only recover damages for pecuniary injuries under a wrongful death claim. *Compare id.*, *with Lewis*, 708 A.2d at 251-52. The *Golway* court's decision, however, that this limitation requires categorically barring damages for parental advice appears to be a dead letter. Defendants do not cite, and this Court could not find, a single District of Columbia court that has adopted this categorical exclusion in the *Golway* opinion's 115-year-old existence. Perhaps, this is because modern courts address the *Golway* court's concern—awarding damages for injuries with a vague and uncertain value—not by categorically excluding types of damages that may be prone to uncertain values, but by requiring a plaintiff's damage award to be supported by substantial evidence. *See Binker*, 492 A.2d at 863 (requiring evidence supporting a jury award to "be more than a 'scintilla,' but it 'need not point entirely in one direction.'" (quoting *Postom*, 177 F.2d at 55)); *see also Romer*, 449 A.2d at 1100 ("While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages."). Regardless of the precise reasons modern courts have elected not to rely upon *Golway*'s interpretation of permissible damages in a

wrongful death claim, the Court declines Defendants' invitation to be the first court in over a

century to resurrect *Golway* so as to categorically bar Mrs. Himes from recovering the value of

Mr. Himes' parental services to the Adult Children.

Third, Defendants rely upon a trial court's remittitur quoted in *District of Columbia v.

Jackson*, 810 A.2d 388, 398 (D.C. 2002), to argue that case law supports barring a decedent's

adult children from recovering the value of lost parental services.[5]  *See* Defs.' Mot. at 7.  The

Court is not persuaded.  In *Jackson*, the court affirmed a remittitur in which the trial court

concluded that the over two-million dollar jury award was out of proportion to "the loss of

services and care, education, training, guidance and parental advice this particular decedent,

based on the record, could have been expected to give [plaintiff] for five years until she turned

eighteen."  810 A.2d at 398.  Despite neither the *Jackson* court nor the trial court explicitly

providing that adult children are barred as a matter of law from recovering the value of lost

parental services, Defendants seize upon the quote's final four words—"until she turned

eighteen"—as evidence of such a bar.  *See* Defs.' Mot. at 7.  This argument, however, ignores the

trial court's explicit justification for issuing the remittitur: the two-million dollar jury award was

excessive in light of the evidence presented at trial.  *See Jackson*, 810 A.2d at 398 (finding the

verdict excessive "based on the record").  The fact that the *Jackson* court also affirmed the

remittitur based in part on the record's "limited proof of services" further solidifies this Court's

conclusion that *Jackson* does not support Defendants' argument, as the case merely stands for the

_____

[5] To clarify, Defendants do not rely upon the *Jackson* court's opinion, but the excerpts of
the trial court's remittitur quoted therein.  *See* Defs.' Mot. at 7.  The remittitur does not appear to
be set forth in full in *Jackson* and Defendants have not provided the Court a complete version of
the remittitur.  Even if the Court were persuaded that the remittitur quoted in *Jackson* supported
Defendants' position, which the Court is not, the Court still would not impose an interpretation
of the Wrongful Death Act unsupported by its text based on such an incomplete source.

unremarkable proposition that excessive damages may be reduced by a remittitur. *See id.*

For similar reasons, Defendants' final case, *Graves v. United States*, 517 F. Supp. 95 (D.D.C. 1981), also does not support Defendant's interpretation of the Wrongful Death Act. After a bench trial, the *Graves* court found the plaintiff's estimate of the value of decedent's services excessive in light of the evidence presented at trial that the decedent "tutored his 16 year old daughter, taught his sons his trade, cooked dinner, did grocery shopping for the family, and did all of the household and automobile repairs." *Id.* at 100. Contrary to Defendants' characterization, *see* Defs.' Mot. at 7, the *Graves* court did not disagree with the plaintiff's estimate because the decedent's children were barred as a matter of law from recovering the value of lost parental services once they reached the age of majority. Instead, the *Graves* court found that, although "there would have come a point where [the decedent] would have no longer been required to tutor his daughter and would have let experience take over as his sons' teacher," plaintiff's estimate erred in assuming that the decedent would continue to provide these services for the remaining thirty-three and a half years of his life expectancy. *Graves*, 517 F. Supp. at 99 n.6 & 100; *see also Lewis*, 708 A.2d at 251-52 (damages under the Wrongful Death Act are limited to "the pecuniary benefits that statutory beneficiaries *might reasonably be expected to have derived* from the deceased had he lived." (quoting *Semler*, 575 F.2d at 925) (internal quotation marks omitted and emphasis added)). In fact, *Graves* undermines Defendants' argument: if the ages of a decedent's children were the basis of a bright-line rule against recovery that Defendants claim, then surely the *Graves* court would have explicitly referenced such a rule. Instead, the court presumably found the ages of the decedent's children largely irrelevant to its inquiry, as the ages of the decedent's sons are completely omitted from the opinion. *See*

*generally Graves*, 517 F. Supp. at 95.

In conclusion, the Court finds that the cases Defendants rely upon do not support a more restrictive interpretation of the Wrongful Death Act than indicated by the Act's text. The Act's text does not distinguish among potential beneficiaries on the basis of their age or whether they are seeking damages for lost parental services. *See* D.C. Code § 16-2701. Instead, the Act defines the potential beneficiaries of a Wrongful Death Act claim broadly so as to include "next of kin." *Id.* § 16-2701(b). To effectuate this fairly broad phrase, this Court must reject Defendants' efforts to impose a narrower definition of potential beneficiaries based on the beneficiary's age and the type of damages sought. *See Public Citizen*, 938 F.2d at 293 ("[I]f [the legislature] has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, it is not [a court's] function . . . to subvert that effect." (quoting *Heimann*, 589 F.2d at 533)). Therefore, for the aforementioned reasons, the Court rejects Defendants' first basis for partial summary judgment.

<u>2.</u>    <u>A Genuine Issue Exists Regarding Mrs. Himes' Damages for the Adult Children's Lost Parental Services</u>

Defendants' alternative basis for summary judgment fares no better. Though convoluted, Defendants' alternative argument appears to break into three discrete sub-parts. First, Defendants claim that damages for the Adult Children's lost services are barred as a matter of law to the extent they duplicate damages for Mrs. Himes' lost services. *See* Defs.' Mot. at 8. Second, Defendants contend that because the Adult Children have reached the age of majority, evidence supporting their damages for lost guidance and personal advice must meet a higher standard of proof than what is required for minor children to recover similar damages. *See id.* Finally, Defendants object to Mrs. Himes' evidence of the Adult Children's lost parental services

16

as "vague" and "uncertain."  *See id.*  The Court shall address each argument below.

          a.      Damages for the Adult Children's lost services are not barred
                 because they may duplicate damages for Mrs. Himes' lost services

Defendants argue that damages for the Adult Children's lost services are not recoverable under the Wrongful Death Act to the extent they duplicate Mrs. Himes' damages for lost services.[6]  *See* Defs.' Mot. at 8; *see also* Defs.' Reply at 2 (arguing that the Adult Children's claims are "subsumed within the claim of [Mrs. Himes]").  Defendants' argument is without merit.

First, Defendants' argument has a dubious premise.  Defendants fail to cite to where Mrs. Himes has ever claimed damages for lost services that might hypothetically duplicate those for the Adult Children.  *See* Defs.' Mot. at 8; Defs.' Reply at 3-5.  Moreover, the estimate of the present value of Mr. Himes' services that Mrs. Himes produced in this case is based on the value of Mr. Himes' services to the entire household—not to individual family members.  *See* Defs.' Mot., Ex. 8 (October 23, 2009 Supplemental Report of Economic Loss of David Himes), at 6. Therefore, other than through pure conjecture, the Court fails to see how Defendants are able to surmise that Mrs. Himes and the Adult Children have claimed duplicative damages from an estimate that provides a single, lump sum value for all of Mr. Himes' lost services.

Even assuming, *arguendo*, that damages for Mrs. Himes and the Adult Children's lost services are duplicative, Defendants have presented no legal authority that would support this Court barring specific damages on a motion for summary judgment.  Notably, Defendants cannot rely on the Wrongful Death Act's text, which has no such restriction, to support their argument.

---

     [6] Here, Defendants refer to the services Mr. Himes provided to the entire household, including cooking, cleaning, and grocery shopping.  *See* Defs.' Mot. at 8.

*See* D.C. Code § 16-2701.  Meanwhile, the sole case Defendants rely upon, *Runyon v. District of Columbia*, 463 F.2d 1319 (D.C. Cir. 1972), does not support their position.  *See* Pl.'s Opp'n at 13.  Although the *Runyon* court did state "that double recovery for the same elements of damage should of course be avoided," 463 F.2d at 1321 (quoting *Hudson v. Lazarus*, 217 F.2d 344, 349 (D.C. Cir. 1954)), it did so when reversing the trial court's remittitur—*i.e.*, post-trial, *see id.* at 1321-23.  *Runyon* does not support this Court prospectively limiting Mrs. Himes' Wrongful Death Act damages on summary judgment.  In fact, it would make no sense for this Court to do so without knowing whether the jury will in fact award Mrs. Himes lost services damages—the necessary predicate for the Adult Children's damages to be potentially duplicative.

Despite the inexplicable factual and legal bases for Defendants' argument, it is clear that the argument derives from Defendants' disagreement with Mrs. Himes' estimate of the value of Mr. Himes' lost services.  *See, e.g.*, Defs.' Stmt. ¶ 15 ("This valuation is premised on a healthy 49 year old, not a 'disabled' 49 year old, as was David Himes"); Defs.' Reply at 4 ("Defendants' [sic] dispute both the value assigned to these lost services and the claim that this decedent who at the time of his death suffered from a pre-existing and unrelated disability.").  However, it is for the jury, not the Court on summary judgment, to determine the proper valuation and allocation of damages for the loss of Mr. Himes' services.  *See* D.C. Code § 16-2701(b) ("*[T]he jury shall allocate* the portion of its verdict payable to the spouse or domestic partner and next of kin, respectively, according to the finding of damage to the spouse or domestic partner and next of kin.") (emphasis added); *see also Binker*, 492 A.2d at 860 ("The issue of damages in a wrongful death or survival action, as in other actions, is particularly within the province of the jury.").  To the extent Defendants are fearful that the jury's allocation of damages in this case may be

excessive, presenting this argument on summary judgment is premature. *See* D.C. Code § 16-2701(b) ("If, in a particular case, the verdict is deemed excessive, the trial judge or the appellate court, on appeal of the cause, may order a reduction of the verdict."); *cf. United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 501 F. Supp. 2d 51, 53 n.2 (D.D.C. 2007) ("Defendant [] makes what is, in essence, a preliminary motion for remittitur on the grounds that the damage amount against him is excessive. . . . [A]s the judgment has not yet been entered in this case, [defendant's] argument for remittitur is premature.").

Therefore, for the aforementioned reasons, the Court rejects Defendants' argument that damages for the Adult Children's lost services are barred as a matter of law because they duplicate the damages for Mrs. Himes' lost services.

> b. Damages for the Adult Children's lost guidance and personal advice are not subject to a higher standard of proof

Defendants also argue that because the Adult Children have reached the age of majority, their damages for lost guidance and personal advice must be proven by "very specific" evidence and must be for services comparable to those "one could obtain from a professional." Defs.' Mot. at 8. Once again, in what has become a refrain in this Memorandum Opinion, Defendants present no legal authority pertaining to the Wrongful Death Act to support their argument. *See id.*

Instead, under the apparent misconception that every jurisdiction's wrongful death statute must be interpreted identically, Defendants support their argument by citing to four cases that all discuss *other* jurisdictions' wrongful death statutes. *See id.* at 8-9 (*Green v. Bittner*, 424 A.2d 210 (1980) (New Jersey's wrongful death statute); *Oldham v. Korean Air Lines Co., Ltd.*, 127 F.3d 43 (D.C. Cir. 1997) (the federal Death on the High Seas Act ("DOSHA")); *Soloman v.*

*Warren*, 540 F.2d 777 (5th Cir. 1976) (DOSHA); *First Bank in Greenwich v. Nat'l Airlines, Inc.*, 288 F.2d 621 (2d Cir. 1961) (DOSHA)).  Defendants make no effort to explain why the Wrongful Death Act must be construed consistent with these other jurisdictions' statutes.  *See generally* Defs.' Mot.; Defs.' Reply.

Moreover, review of the cases Defendants rely upon reveals that these heightened standards are simply courts' attempts to delineate between pecuniary and non-pecuniary losses. For example, the New Jersey Supreme Court interpreted New Jersey's wrongful death statute as requiring that damages for "[c]ompanionship and advice . . . be limited strictly to their pecuniary element." *Bittner*, 424 A.2d at 215.  Accordingly, the court required such damages to "be confined to what the marketplace would pay a stranger with similar qualifications for performing such services," so as to ensure that no damages "may be attributed to the emotional pleasure that a parent gets when it is his or her child doing the caretaking rather than a stranger." *Id.* at 215-16.  Similarly, to ensure that damages are being awarded for the pecuniary aspect of an adult child's lost parental guidance and training, courts awarding damages under DOSHA require a "very specific showing" that the "parents' guidance had a pecuniary value beyond the irreplaceable values of companionship and affection." *Oldham*, 127 F.3d at 56 (quoting *Soloman*, 540 F.2d at 789).

Under the District of Columbia's Wrongful Death Act, however, the limitation of damages to strictly pecuniary losses functions differently.  Although this limitation excludes damages for grief, mental anguish, or sentimental loss, courts have also recognized that this limitation:

> must not be used to defeat the humanitarian objective of the statute[] and to limit recovery to nominal damages.  The pecuniary loss resulting from the death of a

> member of the family cannot be ascertained with precision or computed with
> accuracy. True, in the case of an adult, the income of the deceased and his earning
> capacity form a partial basis for a conclusion. Even in such a situation, however, an
> element of chance and conjecture enters into the determination, because if the
> deceased had not lost his life as a result of the defendant's negligence, he might have
> died shortly thereafter in another accident or from some natural cause.

*Elliott*, 559 F.2d at 766 (quoting *Hord v. Nat'l Homeopathic Hosp.*, 102 F. Supp. 792, 794

(D.D.C. 1952), *aff'd*, 204 F.2d 397 (D.C. Cir. 1953)); *see also Hord*, 102 F. Supp. at 794-95

("Death statutes have their roots in dissatisfaction with the archaisms of the law . . . . It would be

a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate

the very evils to be remedied." (quoting *Van Beeck v. Sabine Towing Co.*, 300 U.S. 342, 350-51

(1937))). Therefore, rather than bar certain lost service damages out of concern of their

potentially non-pecuniary nature, District of Columbia courts require a damage award to be

" 'based largely on the good sense and sound judgment of the jury . . . [and] all the facts and

circumstances of the case,' " *Binker*, 492 A.2d at 864 (quoting *Rankin*, 234 F.2d at 36) (alteration

in the original), as the "loss of [] services cannot be quantified with mathematical precision," *id.*

at 863.

In conclusion, the Wrongful Death Act's text and case law do not support Defendants'

two-tiered, heightened standard for adult children seeking damages under the Act for lost

guidance and advice. Furthermore, this Court, sitting in diversity, is not inclined to fashion novel

burdens of proof under a state law *ex nihilo. See, e.g., Joy v. Bell Helicopter Textron, Inc.*, 999

F.2d 549, 567 (D.C. Cir. 1993) (A "federal court in a diversity case is not free to engraft onto . . .

state rules exceptions or modifications which may commend themselves to the federal court, but

which have not commended themselves to the State in which the federal court sits." (quoting

*Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 424 (D.C. Cir. 1988))); *Tidler*, 851 F.2d at 424 ("Absent

some authoritative signal from the legislature or the [state courts], we see no basis for even considering the pros and cons of innovative theories. . . . We must apply the law of the forum as we infer it presently to be, not as it might come to be." (quoting *Dayton v. Peck, Stow & Wilcox Co.*, 739 F. 2d 690, 694-95 (1st Cir. 1984))). Therefore, the Court rejects Defendants' argument that, because the Adult Children have reached the age of majority, their damages for lost guidance and personal advice must somehow meet a higher standard of proof.

c.      A genuine issue exists as to whether Mr. Himes provided parental services to the Adult Children

For their final argument, Defendants claim that Mrs. Himes' evidence of the parental services Mr. Himes provided to the Adult Children is "vague," "uncertain," and "fail[s] to set forth in any detail the claim for pecuniary loss." Defs.' Mot. at 8.[7] The Court construes this argument as claiming that there is no genuine issue that Mr. Himes did not actually provide parental services to the Adult Children, and therefore Defendants are entitled to judgment as a matter of law precluding such damages.[8] As previously mentioned, damages under the Wrongful Death Act for lost services include damages for lost "care, education, training, and personal

---

[7] Defendants do not appear to claim that Mrs. Himes' evidence regarding other, non-parental services that Mr. Himes provided to the Adult Children are "vague" or "uncertain." *See* Defs.' Mot. at 8 ("[T]he adult children also seek to recover for lost services as it relates to loss of parental support. The evidence on this point is vague and evidences only that the decedent was available to talk to his children about what was going on in their lives and steer them in the right direction."). However, even if Defendants' motion for partial summary judgment extends beyond strictly parental services, the Court would similarly deny the motion as the record indicates that Mr. Himes performed yard work, laundry, cooking, and grocery shopping for his family, including the Adult Children. Defs.' Stmt. ¶¶ 8-9; Diana Himes Dep. at 64:16-65:2, 66:9-67:2, 67:15-21; Nicole Kidd Dep. at 27:17-28:13.

[8] To the extent Defendants seek summary judgment because Mrs. Himes' evidence does not meet the heightened standard of a "very specific showing," the Court rejects this argument for the reasons stated above. *See supra* Part III.B.2.b.

advice." *E.g.*, *Herbert*, 808 A.2d at 778 n.2.

In response to Defendants' motion, Mrs. Himes has identified specific facts demonstrating the existence of a genuine issue that Mr. Himes provided parental services. *See* Pl.'s Opp'n at 12. For example, Mrs. Himes identifies how Defendants do not dispute that Mr. Himes provided child care services to his daughter Nicole, by feeding and caring for her children. *See* Pl.'s Opp'n at 12; Defs.' Stmt. ¶¶ 8, 11; Diana Himes Dep. at 64:11-15, 65:1-2. Mrs. Himes also contends that Mr. Himes provided personal advice to the Adult Children. *See* Pl.'s Opp'n at 12; Defs.' Stmt. ¶ 8; Diana Himes Dep. at 66:15-17. In their reply, Defendants do not rebut Mrs. Himes' claim that the aforementioned facts demonstrate the existence of a genuine issue that Mr. Himes provided parental services to the Adult Children. *See generally* Defs.' Reply.

Analyzing these facts in Mrs. Himes' favor, as the Court must, a reasonable trier of fact could find for Mrs. Himes and award damages for the Adult Children's lost parental services. *See Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). In reaching this conclusion, the Court expresses no opinion as to the actual value of these lost parental services, as "[t]he issue of damages in a wrongful death or survival action . . . is particularly within the province of the jury." *Binker*, 492 A.2d at 860. The Court simply holds that Mrs. Himes has demonstrated a genuine issue as to whether Mr. Himes actually provided parental services to the Adult Children.

## IV. CONCLUSION

The Court has considered the remaining arguments tendered by the parties, and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall DENY Plaintiff's [63] Motion for Leave to File a Surreply. Additionally, the Court shall

DENY Defendants' [60] Motion for Partial Summary Judgment as (1) Mrs. Himes is not barred as a matter of law from recovering damages under the Wrongful Death Act for the Adult Children's lost services and (2) a genuine issue exists as to whether Mr. Himes provided the Adult Children parental services.  An appropriate Order accompanies this Memorandum Opinion.

Date: December 1, 2010

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge